U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

SEP 30 2005

ROBERT H. SHEMWELL, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| GARRARD A. POWELL AND KYLE H. PLUMLEE | CIVIL ACTION NO. 03-0707 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| COLLIER CONSTRUCTION, L.L.C. KA | MAGISTRATE JUDGE HORNSBY |

## MEMORANDUM RULING

This matter is before the Court after a hearing under Federal Rule of Civil Procedure 16 to determine whether defendant Collier Construction, L.L.C. KA ("Collier Construction") employed plaintiffs Garrard A. Powell ("Powell") and Kyle H. Plumlee ("Plumlee") within the meaning of the Fair Labor Standards Act ("FLSA") and/or Louisiana Revised Statute 23:631 *et seq*. After a careful review of the record, the parties' pre-trial and post-trial briefs, the transcript of the hearing, and applicable case law, the Court finds that Collier Construction was, for purposes of the FLSA and Section 631 *et seq.*, the employer of both Powell and Plumlee.

### I. FACTUAL AND PROCEDURAL BACKGROUND

During the year 2002, Collier Construction performed mold remediation projects in the Beaumont, Texas area. (Doc. 37). According to Powell and Plumlee, they were recruited and hired by Raymond Barbo ("Barbo"), on behalf of Collier Construction, to work on the mold remediation projects in the Beaumont area. (Doc. 19). Plaintiffs maintain that their hiring was "approved" by Reggie "Ted" Collier ("Ted Collier"), a founding member of Collier Construction. (Doc. 37). Conversely, Collier Construction maintains it never employed Powell and Plumlee; rather, the plaintiffs were employees of Barbo, an independent

contractor/subcontractor engaged by Collier Construction in connection with the mold remediation projects. (Doc. 38).

While Barbo himself did not testify during the hearing, the record clearly establishes that he has a long history with Collier Construction. Barbo performed many different jobs for Collier Construction, including painting, carpentry work, mold remediation, and brick laying. Ted Collier classified Barbo as "just kind of a handyman" and a "good laborer, good worker." Ted Collier further testified that other than Barbo's previous experience as a driller on an oil rig, he did not know if Barbo possessed any other specialized skills. According to testimony adduced at the hearing, Barbo came to Beaumont to work for Collier Construction about two months after the company began the mold remediation projects in the Beaumont area. While in Beaumont, Barbo first lived in a hotel and later moved into a house owned by J.D. Gill ("Gill"), one of the members of Collier Construction.

Collier Construction secured contracts for the mold remediation projects through various insurance companies in the Beaumont area.[1] Collier Construction had multiple "groups" working on the mold remediation projects in the Beaumont area. Barbo "lead" one such group. The mold remediation projects involved residential properties and the work entailed two phases – mold abatement, or the tear out phase, and the build back phase. Barbo, Powell, and Plumlee performed work related to the tear out phase; thus, the tear out phase is the only relevant phase for purposes of this memorandum ruling.

The tear out phase began only after an air quality test was secured by the insurance company and then performed by an independent third party. After the air quality test,

---

[1] Ted Collier testified during the hearing that Barbo was not involved in any negotiations between Collier Construction and the various insurance companies relating to Collier Construction's securing the mold abatement contracts.

laborers would begin performing the tear out phase. As suggested by its name, the tear out phase simply consisted of laborers tearing out areas of sheetrock, flooring, and/or wood known, or suspected, to be harboring mold. Laborers would then scrub away any remaining mold. As stated by Ted Collier during the hearing, the work performed during the tear out phase was not rocket science and was essentially manual labor.

Ted Collier testified that Barbo was paid $1,000.00 a day. Collier Construction would set the number of days Barbo could work on a particular job. If Collier Construction and/or Barbo saw that more work was required, Collier Construction would submit a change order to the insurance company seeking more days to complete the work. If the change order was approved, Barbo was given additional days to complete the work. Barbo also supplied his own tools, such as skill saws, hammers, wood chisels, and paint brushes. However, Collier Construction provided the protective clothing and air masks worn by the abatement workers, all of the chemicals necessary for the tear out phase, and the "air scrubber" machines and filtration system needed during the tear out phase.

Plaintiffs were paid $100.00 each per day for their mold remediation work. (Doc. 19, ¶ 12). Plaintiffs admit that Barbo distributed their wages to them; however, Plumlee recalled at least one occasion where he worked on another "crew" and received a cash payment from Ted Collier on that occasion. (Id., ¶ 13; Doc. 38). Ted Collier denies that such a cash payment was made. (Doc. 38). Plaintiffs also allege that Collier Construction "exercised control over firing and disciplinary decisions." (Doc. 19, ¶ 14). Conversely, Collier Construction maintains that it never employed plaintiffs and that they were at all times controlled and supervised by Barbo. (Doc. 31).

Powell and Plumlee were terminated on or about July 3, 2002. (Doc. 19, ¶ 16).

Powell and Plumlee admit that Barbo informed them of their termination, but both believe that Ted Collier, on behalf of Collier Construction, instructed Barbo to fire them. (Doc. 38, ¶ 65).

Plaintiffs Powell and Plumlee filed the instant civil complaint on April 17, 2003, alleging that Collier Construction failed to pay their wages for several days work. (Doc. 1). Specifically, Powell alleges that Collier Construction owed him for four and one-half days of work and Plumlee alleges that Collier Construction owed him for six days of work. (Doc. 19, ¶ 17-18). Plaintiffs seek, *inter alia*, monetary damages in the form of wages and penalties under the FLSA and Louisiana Revised Statute 23:631 *et seq.* (Id.). Collier Construction answered the complaint on September 5, 3003, arguing that Collier Construction was never the employer of Powell and Plumlee. (Doc. 7). Plaintiffs filed an amended complaint on March 11, 2004. (Doc. 19). On August 27, 2004, the Court presided over a status conference, wherein a hearing under Federal Rule of Civil Procedure Rules 16(c)(13) and 42(b) was set for September 30, 2004. (Doc. 32). The above-captioned matter came on for hearing on September 30, 2004 to determine whether Collier Construction employed Powell and Plumlee within the meaning of the FLSA and/or Louisiana Revised Statute 23:631 *et seq.*[2]

---

[2] On October 1, 2004, the Court issued a minute entry directing the parties to submit supplemental briefs on two issues: (1) which party bears the burden of proof and/or production on the joint employer issue, and (2) what is the evidentiary effect and/or inference that may be drawn from Barbo's failure to appear on a subpoena.

As discussed below in section III(A), the Court based its ruling regarding employment status under the FLSA on the premise that because Collier Construction employed Barbo, it likewise employed both Powell and Plumlee. The Court discussed the joint employer issue only as a secondary matter. See infra n. 4. Thus, it was not necessary for the Court to decide the issue of which party bears the burden of proof and/or production on the joint employer issue.

## III. LAW AND ANALYSIS

### A. Employment Status Under The Fair Labor Standards Act.

The Fair Labor Standards Act ("FLSA") defines the term "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . ." See 29 U.S.C. § 203(d). The Act further defines "employee" as ". . . any individual employed by an employer." See 29 U.S.C. § 203(e)(1). As these definitions provide little guidance on their face, courts have generally turned to jurisprudential doctrine to determine employment status under the FLSA. The Fifth Circuit has reasoned that "the ultimate determination of employee status is a question of law, whereas the district court's 'subsidiary findings are of fact.'" Dalheim v. KDFW-TV, 918 F.2d 1220, 1225-26 (5th Cir. 1990), citing Beliz v. W.H. McLeod & Sons Packing Co., 765 F.3d 1317 (5th Cir. 1985).

---

As to the second issue, the Court essentially gave no effect and drew no inference from Barbo's failure to appear on the subpoena. The Court found that even with Barbo's absence, the record evidence was sufficient to meet the preponderance of the evidence standard needed to determine whether Powell and Plumlee were employed by Collier Construction.

Finally, during the September 30, 2004 hearing, Collier Construction lodged a general hearsay objection as to Powell's and Plumlee's testimony regarding statements made to them by Barbo. Plaintiffs argue that such statements were not hearsay because (1) they were not offered to prove the truth of the matters asserted in those statements and/or (2) they were admissions by a party opponent.

Plaintiffs' admission by a party opponent argument fails because the statements were not offered against a party by *an opposing party*. There is no dispute that Barbo was dismissed from this case and, as the Court stated during the hearing, there is no hearsay rule regarding admissions by a former party opponent.

Conversely, the Court finds that Plaintiffs' argument that Barbo's statements were not hearsay because they were not offered for the truth of the matter asserted prevails. The Court did not consider the statements of Barbo for the truth of the matter asserted, i.e., that Collier Construction was the ultimate employer of Barbo, Powell, and Plumlee. Rather, the Court admitted and considered the statements for the limited purpose of ascertaining background information relating to the environment in which Powell and Plumlee worked and the subjective beliefs of Powell and Plumlee as to their employment status.

The instant case turns on the three-way relationship among Collier Construction, Barbo, and plaintiffs Powell and Plumlee. In Beliz, the Fifth Circuit examined a similar relationship and reasoned:

> In deciding whether migrant farm laborers employed to 'chop' . . . cotton were employees of the farmer on whose farm they worked, or of the labor contractor who recruited them, or of both, we observed in Castillo v. Givens, 704 F.2d 181 (5th Cir. 1983), that, if the alleged contractor were held to be an employee of the farmer, it would necessarily follow that the workers were in turn the farmer's employees. But even if the recruiter were held to be an independent contractor, the FLSA might require the conclusion that the recruiter-contractor and the farmer were joint employers of the workers. In making these determinations, we examine the economic realities of the relationship among the workers, the contractor, and the farmer.

Beliz, 765 F.3d at 1327. Thus, in ascertaining the employment status of Powell and Plumlee under the FLSA, the Court must examine whether Barbo, Powell, and Plumlee, as a matter of economic reality, were economically dependent upon Collier Construction, the business to which they rendered their services. See Herman v. Express Sixty-Minutes Delivery Service, Inc., 161 F.3d 299, 303 (5th Cir. 1998). Courts have generally reasoned that the common path of an employee "is one hallmarked by the economic necessity of finding employment in the business of others." Donovan v. Tehco, Inc., 642 F.2d 141, 143 (5th Cir. 1981). Thus, simply put, in order to determine the employment status of Powell and Plumlee, the Court must examine whether Barbo, Powell, and Plumlee, as a matter of economic reality, were in business for themselves or for Collier Construction. Id., citing Donovan, 642 F.2d at 143.

To aid in the task of determining employment status, courts consider five factors:[3] (1)

---

[3] This five factor test was first derived from United States v. Silk, 331 U.S. 704, 715, 67 S.Ct 1463, 1469 (1947).

the degree of control exercised by the alleged employer; (2) the extent of the relative investments of the worker and alleged employer; (3) the degree to which the worker's opportunity for profit and loss is determined by the alleged employer; (4) the skill and initiative required in performing the job; (5) and the permanency of the relationship. See Herman, 161 F.3d at 303 (citation omitted). Yet, no single factor is the final determinant of the economic dependence inquiry. See Usury v. Pilgrim Equipment Co., Inc., 527 F.2d 1308, 1311 (5th Cir. 1976). In discussing these factors, the Fifth Circuit stated:

> The five tests are aids – tools to be used to gauge the degree of dependence of alleged employees on the business with which they are connected. It is dependence that indicates employee status. Each test must be applied with that ultimate notion in mind. More importantly, the final and determinative question must be whether the total of the testing establishes the personnel are so dependent upon the business with which they are connected that they come within the protection of FLSA or are sufficiently independent to lie outside its ambit.

Id. at 1311-1312. Further, any label attached to an employment relationship "is dispositive only to the degree that it mirrors the economic reality of the relationship." Donovan, 642 F.2d at 143.

The Court now proceeds to an examination of the five factors referenced above.

### 1. The Degree Of Control Exercised By The Alleged Employer.

The record is clear that Collier Construction had some degree of control over Barbo, Powell and Plumlee, as it is evident that Collier Construction controlled the mold remediation projects – Collier Construction secured the contracts, instructed the "crews" on where to work, and set the number of days allocated to each project.

As to Barbo, Ted Collier specifically stated that Barbo performed work *for* Collier Construction. Further, Collier Construction would allocate the number of days Barbo could

spend on any particular mold remediation project and Ted Collier would make visits to the job site to ensure that projects "came in under a certain amount of time." In fact, Ted Collier even admitted that, to some extent, he supervised Barbo. Ted Collier would take Barbo out to the jobs, show him what to do, and then return to the job site for inspections. When asked directly about supervision, Ted Collier stated, "I supervised Raymond Barbo but not every minute. I mean, it was just times when I was out there."

Plumlee testified at the hearing that he believed that Collier Construction was his employer. He recalled that Barbo approached him, informed him that he had been working with Collier Construction, and that he was going to have his own crew. Plumlee agreed to go to work on the crew, but knew that Barbo would have to talk to Ted Collier first. Plumlee specifically recalled his first meeting with Ted Collier, wherein Ted Collier told him he must be professional about work and that if he did something he did not like, Plumlee would be gone in a minute. Plumlee also remembered that Ted Collier had directly supervised him on a job site on at least two occasions.

Powell testified that he was introduced to Ted Collier on his first job in Beaumont. Before performing any work, Powell recalled that Ted Collier told him "you're working for me," what to do/what not to do, and that he would have "no problem getting rid of Powell if something goes wrong." Like Plumlee, Powell stated that he was under the impression that Collier Construction was his employer. Powell admitted that most of his direct supervision came from Barbo, yet he recall one instance where Ted Collier came to the job site and provided some supervision.

Further, while Barbo was the first person to mention the possibility of termination to Powell and Plumlee, both remember that Barbo did not fire them immediately. Rather,

Powell and Plumlee believe that Barbo had to speak with Ted Collier first. When Barbo did inform Powell and Plumlee of their termination, both Powell and Plumlee believed that Barbo terminated them because Ted Collier said they had "to go."

Based on the foregoing, the Court finds that the degree-of-control factor points toward employee status, as the record evinces that Collier Construction exercised control over not only Barbo, but also Powell and Plumlee.

### 2. The Extent Of The Relative Investments Exercised By The Alleged Employer.

The Court finds that the relative investments of Barbo, Powell, and Plumlee, as compared to the investments of Collier Construction, were insignificant. The testimony at the hearing revealed that Collier Construction owned and/or provided the major machinery, such as air scrubbers and the filtration system, necessary for the tear out phase. Collier Construction also provided all of the chemicals, protective clothing, air masks, and caulking needed during the tear out phase. There was also testimony regarding instances where Barbo purchased some materials needed during the tear out phase and was then reimbursed for such materials. Conversely, Barbo supplied only tools, such as skill saws, hammers, wood chisels, paint brushes, and nail bars. Further, both Powell and Plumlee testified that they did not use any of their own tools while working on the mold remediation projects in Beaumont.

Moreover, Collier Construction bore the risk associated with the mold remediation projects. Collier Construction, not Barbo, Powell, or Plumlee, entered into legally binding mold abatement contracts with various insurance companies. By doing so, Collier Construction bound itself by the terms of the contract and became the ultimate guarantor of

the quality of the work performed under the contract.

Thus, the Court finds that the relative investment factor favors a determination that Barbo, Powell and Plumlee were employees of Collier Construction, as the majority of the necessary materials, supplies, and machinery for the tear out phase was provided by Collier Construction and all of the capital risk was borne by Collier Construction.

### 3. Degree To Which The Worker's Opportunity For Profit Or Loss Is Determined By The Alleged Employer.

The Court finds that Collier Construction *ultimately* determined Barbo's, Powell's, and Plumlee's opportunities for profit and loss. After being contacted by an insurance company, Collier Construction would meet with the insured, develop the scope of the work to be done, and then submit a bid to the insurance company for the mold remediation work. Then, Collier Construction would meet with Barbo, determine the number of days a particular job would take, and then agree to pay Barbo $1,000.00 a day. Thus, it was Collier Construction that set the number of days Barbo could work on a particular job. If Collier Construction and/or Barbo saw that more work was required, Collier Construction would submit a change order to the insurance company seeking more days to complete the work. If the change order was approved, Barbo was given additional days, and the corresponding additional pay, to complete the work.

From the $1,000.00 paid to him, Barbo paid Powell and Plumlee $100.00 each, per day. Plaintiffs admit that Barbo distributed their wages to them; however, Plumlee did recall at least one occasion where he worked for another "crew" and received a cash payment from Ted Collier. Based on this, it is clear that Powell and Plumlee had no opportunity to determine their profit or loss, as they were paid a flat rate of $100.00 per day and the

number of days they worked was based on the number of days Collier Construction allocated to a particular job.

It is true that Barbo could control how much of the $1,000.00 remained with him, as he was in charge of hiring his own crew. For example, if he hired two workers, he would keep $800.00 per day; yet, if he hired four workers, he would keep only $600.00 per day. While cognizant of this fact, the Court also notes that Barbo did not have the luxury of "taking his time" with any particular mold remediation project. Rather, he knew he had a certain number of days, determined by Collier Construction, to complete the job. Further, Barbo was dependent upon Collier Construction for income, as there is no evidence in the record indicating that he was performing mold remediation work, or any other type of work, for another company in the Beaumont area. Thus, the Court finds that the opportunity for profit and loss factor also weighs toward employee status.

### 4. The Skill And Initiative Required In Performing The Job.

The Court finds that Barbo did not exhibit sufficient skill or initiative to indicate that he was an independent contractor/subcontractor, not an employee, of Collier Construction. As to skill, the record evidence establishes that the mold remediation Barbo performed was manual labor that required no specialized skill. During his testimony, Ted Collier admitted that Barbo, other than being a driller, had no special skills. Further, the testimony of both Plumlee and Powell indicates that little skill was needed to perform the mold remediation. Plumlee testified that the mold remediation work was "just labor," was not really hard, and that he had no training for it. Likewise, Powell stated that he had no highly skilled work experience and no mold remediation license. Most importantly, even Ted Collier himself testified that the mold remediation work being performed by Barbo, Powell, and Plumlee was

"just not rocket science work."

As to initiative, the record evidence indicates that Barbo asserted little or no initiative in performing the mold remediation work. While Barbo's work could be classified as "routine work" requiring industry and efficiency, such work "is not indicative of independence and nonemployee status." Brock v. Mr. W Fireworks, Inc., 814 F.2d 1042, 1053 (5th 1987). Barbo was simply unable to exert initiative, as Ted Collier, or some other representative of Collier Construction, controlled the major components open to initiative, such as participating in the bidding process and securing the mold remediation contracts with various insurance companies in the Beaumont, ensuring that the air quality control test was performed, establishing pricing, and making initial contact with homeowners. The same is true of Powell and Plumlee because they exerted no initiative, as all major components open to initiative were controlled by Collier Construction.

Simply put, the record evidence evinces that the mold remediation work was manual labor requiring little skill and virtually no initiative on the part of Barbo, Powell, and Plumlee.

### 5.     The Permanency Of The Relationship.

The Court finds that there was a substantial degree of permanency between Barbo and Collier Construction. Ted Collier testified as to the longtime employment relationship between Collier Construction and Barbo. He stated that he had known Barbo for at least three or four years and that Barbo had performed many different jobs for Collier Construction, including painting, carpentry work, and mold remediation. Ted Collier classified Barbo as "just kind of a handyman." From this evidence, the Court finds that Barbo did not work for Collier Construction for just a short period of time; rather, he had a durable and continuing relationship with the company that indicates dependence. Further, record

evidence indicates that Barbo was still employed by Collier Construction as late as the spring of 2004. Thus, as to Barbo, the permanency factor points toward employee status.

Conversely, Powell and Plumlee performed the mold remediation work for only a short period of time. In his deposition, Powell stated that he only worked one mold remediation job in Beaumont and that he was only in Beaumont for about five days. See Defendant's Exhibit 4 at 17, 19. The record indicates that Plumlee performed mold remediation work in Beaumont for approximately six days. See Doc. 19, ¶ 17. Plumlee also testified that he was not working for any other companies while in the Beaumont area. Thus, the Court does not find a strong sense of permanence between Collier Construction and Powell and Plumlee.

### 6. Conclusion Under The Fair Labor Standards Act.

On balance, the Court finds that the five jurisprudential factors favor the determination that Barbo was an employee of Collier Construction.[4] Relying on the reasoning set forth in

---

[4]Notwithstanding, even if Barbo was an independent contractor, not an employee, of Collier Construction, the Court finds that Barbo was the joint employer, along with Collier Construction, of Powell and Plumlee under the FLSA. In Hodgson v. Griffin and Brand of McAllen, Inc., 471 F.2d 235, 237 (5th Cir. 1973), the Fifth Circuit reasoned that independent contractor status does not as a matter of law negate the possibility that a joint employment relationship exists. The Fifth Circuit noted that the joint employer inquiry "does not depend on technical or isolated factors but rather on the circumstances of the whole activity . . . it depends not on the form of the relationship but on the economic reality." Id. (internal citations and quotations omitted). The factors to be considered in the joint employer inquiry are: (1) Whether or not the employment takes place on the premises of the company?; (2) How much control does the company exert over the employees?; (3) Does the company have the power to fire, hire, or modify the employment condition of the employees?; (4) Do the employees perform a 'specialty job' within the production line?; and (5) May the employee refuse to work for the company or work for others?" Id. at 237-38.

It is apparent that these five questions are substantially similar to the five jurisprudential factors set forth earlier in this memorandum ruling. See supra pp. 6-7. Specifically, the Court notes factors two and three from the Hodgson decision. As evidenced in section III(A)(1), Collier Construction controlled the work activities and effected the supervision of Barbo, Powell, and Plumlee. In fact, Ted Collier's testimony indicated that he had some degree of "on-the-job" control over Barbo, Powell, and Plumlee. Further, the Court

Beliz, 765 F.3d at 1327, because the Court has determined that Barbo, the alleged independent contractor/subcontractor, was an employee of Collier Construction, it necessarily follows that Powell and Plumlee were in turn Collier Construction's employees under the FLSA.

## B. Employment Status Under Louisiana Revised Statute 23:631 *et. seq.*

Powell and Plumlee also contend that they are entitled to penalties under Louisiana Revised Statute 23:631 *et seq.* Yet, Collier Construction maintains that the Louisiana statutes are inapplicable because Powell and Plumlee were not its employees. Rather, Powell and Plumlee were employed by Barbo, a subcontractor/independent contractor engaged by Collier Construction.

Section 631 states, in pertinent part:

> A.(1)(a) Upon the discharge of any laborer or other employee of any kind whatever, it shall be the duty of the person employing such laborer or other employee to pay the amount then due under the terms of employment, whether the employment is by hour, day, week, or month, on or before the next regular payday or no later than fifteen days following the date of discharge, whichever occurs first.

Section 632 further provides:

> Any employer who fails or refuses to comply with the provisions of R.S. 23:631 shall be liable to the employee either for ninety days wages at the employee's daily rate of pay, or else for full wages from the time the employee's demand for payment is made until the employer shall pay or tender the amount of unpaid wages due to such employee, whichever is the lesser amount of penalty wages.

---

found that the record supported the conclusion that Ted Collier, on behalf of Collier Construction, made the ultimate decision to terminate Powell and Plumlee. All of this tends to indicate an employment relationship. Thus, viewing the total work arrangement between Collier Construction, Barbo, and Powell and Plumlee, the Court finds that Collier Construction was a joint employer.

The primary issue under the Louisiana statutes is whether the facts of the instant case indicate that Barbo was an employee of Collier Construction, such that Powell and Plumlee would also be employees of Collier Construction, or that Barbo was an independent contractor, such that there would be no employment relationship between Collier Construction and Powell and Plumlee.

Under Louisiana law, "the term independent contractor connotes a freedom of action and choice in respect of the undertaking and a legal responsibility on the part of the contractor in case the agreement is not fulfilled; the relationship presupposes a contract between the parties, and it must not be subject to termination at the will of either side without a corresponding liability for its breach." Lorentz v. Coblentz, 600 So.2d 1376, 1380 (La.App. 1st Cir. 1992) (citation omitted). Louisiana courts have reasoned that "it is not the actual control, but the right of control which is significant in order to find an employment relationship." Id.

In this case, there is no evidence of an actual contract between Barbo and Collier Construction; accordingly, no breach would be found were either party to terminate the relationship. However, as in Coblentz, there are facts in the record that could potentially signal that an independent contractor/contractee relationship existed between Barbo and Collier Construction. For instance, the record is clear that Barbo supplied some of his tools, such as skill saws, hammers, wood chisels, and paint brushes. Further, as evidenced by submissions to the Court, it also appears that Collier Construction did not withhold federal deductions from Barbo's paychecks. See Defendant's Exhibits 1 - 4, IRS Forms and Paychecks.

Yet, the Court's analysis does not end here. As directed by Louisiana law, the Court

must also consider other factors in determining whether an independent contractor/contractee relationship existed between Barbo and Collier Construction. In attempting to resolve such an issue, the Court must look primarily to four factors: (1) selection and engagement; (2) payment of wages; (3) power of dismissal; and (4) control. Id., citing Glover v. Diving Services International, Inc., 577 So.2d 1103 (La.App. 1st Cir.1991).

The Court has previously discussed the long standing relationship between Barbo and Collier Construction, a factor which is relevant to the selection and engagement inquiry. The record indicates that Barbo performed a variety of jobs for Collier Construction, including, painting, carpentry work, mold remediation and brick laying. As to the mold remediation projects, Barbo was paid $1,000.00 per day – an amount determined by Collier Construction. The number of days Barbo spent on any given mold remediation project was also determined by Collier Construction. While there is no specific testimony or evidence in the record as to Collier Construction's power of dismissal as to Barbo, the Court notes that Ted Collier testified that Barbo worked *for* Collier Construction. Thus, if Ted Collier hired Barbo, then it logically follows that Ted Collier could also dismiss Barbo.

The Court now moves to the control factor, which the Court finds to be the most telling factor of all. The record is replete with evidence indicating that in economic reality, Barbo was subject to the control and direction of Collier Construction. Barbo was subject to the control of Collier Construction in the actual execution of daily tasks. While it is true that he did not have to report to an office or be constantly supervised by a Collier Construction representative, he was subject to direction as to where he worked, as to the length of his work, and as to how he performed his work. For instance, there was testimony at the

hearing that Ted Collier often returned to job sites for inspections and, when asked directly about supervision, Ted Collier stated, "I supervised Raymond Barbo but not every minute. I mean, it was just times when I was out there." Further, Barbo did not have complete freedom of movement insomuch as jobs had to be completed within a certain number of days.

Based on the foregoing, the Court finds that a weighing of all facts surrounding the relationship between Barbo and Collier Construction indicate that Barbo was an employee, not an independent contractor. Because Barbo was an employee of Collier Construction, it follows that Powell and Plumlee were also employees of Collier Construction for purposes of Louisiana Revised Statute 23:631 *et seq.*

## IV. CONCLUSION

Based on the foregoing, the Court finds that Collier Construction, L.L.C. KA was, for purposes of the Fair Labor Standards Act and Louisiana Revised Statute 23:631 *et seq.*, the employer of both Garrard A. Powell and Kyle H. Plumlee. Thus, Collier Construction, L.L.C. KA is a proper defendant in the above-captioned matter and this case shall proceed to a determination of the merits. An order consistent with the terms of this Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED** at Shreveport, Louisiana, this 30th day of September, 2005.

_____
S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE